# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:  COUNTRYWIDE FINANCIAL     :
CORPORATION MORTGAGE-BACKED          MDL No. 2265
SECURITIES LITIGATION          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

U.S. BANK NATIONAL ASSOCIATION, as Trustee,   :
for HarborView Mortgage Loan Trust, Series 2005-10,

                   :

         Plaintiff,

                   :

      -against-                12 Civ. 1066 (MRP) (MANx)
                   :      ECF Case

COUNTRYWIDE HOME LOANS, INC. (d/b/a BANK
OF AMERICA HOME LOANS), BANK OF
AMERICA CORPORATION, COUNTRYWIDE     :
FINANCIAL CORPORATION, BANK OF
AMERICA, N.A., and NB HOLDINGS         :
CORPORATION,

                   :

        Defendants.

                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO REMAND

U.S. Bank National Association ("U.S. Bank" or "Plaintiff"), not in its individual capacity but solely in its capacity as Trustee (the "Trustee") for the HarborView Mortgage Loan Trust 2005-10, by its attorneys, Kasowitz, Benson, Torres & Friedman LLP, submits this supplemental memorandum of law in further support of its Motion to Remand.[1]

## BRIEF STATEMENT OF FACTS

Plaintiff incorporates by reference all of the facts set forth in its Motion to Remand as if fully set forth herein.

---

[1] Capitalized terms used but undefined herein have the meaning given to them in the Motion to Remand.

## SUPPLEMENTAL ARGUMENT

I.   **The Bank Merger And National Banking Acts Provide No Basis For Removal Here**

This Court lacks federal question jurisdiction over this action because, among other things, neither the Bank Merger Act nor the National Banking Act preempts state law successor liability claims against national banks.

Federal jurisdiction is proper over a state law claim in only two circumstances: (1) "when Congress expressly so provides," or (2) "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 839 (9th Cir. 2004) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).  There can be no dispute that the first ground does not apply because neither the Bank Merger Act nor the National Banking Act "expressly" provides for federal jurisdiction over Plaintiff's state law successor liability (or breach of contract) claim. *See* 12 U.S.C. § 1828(c) (2012); 12 U.S.C. §§ 215a, 215a-3 (2012). *See also Marshall & Ilsley Corp. v. Heimann*, 652 F.2d 685, 694 (7th Cir. 1981) (Section 1828(c) "of the Bank Merger Act concerns the antitrust implications of bank mergers"); *Sprague v. Neil*, 2007 U.S. Dist. LEXIS 77767, at *9 (M.D. Pa. Oct. 19, 2007) ("The National Bank Act governs the corporate existence of the entity resulting from the merger of two or more national banks") (citing 12 U.S.C. § 215a). Thus, Defendants can only make use of the second ground – *i.e.*, that the Bank Merger and National Banking Acts completely preempt Plaintiff's state law successor liability claims. That, however, is not the case.

"Complete preemption . . . arises only in *extraordinary* situations.  The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims. The United States Supreme Court has identified only three federal statutes that satisfy this test:

2

(1) Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; (2) Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132; and (3) the usury provisions of the National Bank Act, 12 U.S.C. §§ 85, 86." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 862 (9th Cir. 2003) (citations and quotations omitted; emphasis added). Notably missing from the Supreme Court's list are the Bank Merger Act and the specific merger provisions of the National Banking Act cited by Defendants – *i.e.*, 12 U.S.C. §§ 215a, 215a-3.

Indeed, neither the Bank Merger Act nor the merger provisions of the National Banking Act create federal jurisdiction over state law claims. *See United Jersey Banks v. Parell*, 783 F.2d 360, 370 (3d Cir. 1986) (reversing the district court's denial of a motion to remand because the Bank Merger Act did not preempt state law challenge to a merger between two nationally chartered banks); *Luckett v. First Midwest Bank*, 576 F. Supp. 2d 925, 928 (N.D. Ill. 2008) (denying reconsideration of dismissal for lack of subject matter jurisdiction because state law claim arising out of a merger involving a national banking association did not create federal jurisdiction under the National Banking Act).

### A.    The Bank Merger Act Does Not Create Federal Jurisdiction

In *Parell*, the U.S. Court of Appeals for the Third Circuit faced "a significant issue regarding the scope and propriety of removal to federal court on the basis of what is essentially a claim for federal preemption" of the Bank Merger Act. *Parell*, *supra*, 783 F.2d at 362. Plaintiffs, five New Jersey bank holding companies and their subsidiaries, "sought relief in the form of a declaration that New Jersey banking and antitrust laws applied to the merger" of two nationally chartered banks, and "that the merger would violate these laws." *Id.* at 364. Plaintiffs deliberately chose not to challenge the merger under the Bank Merger Act by delaying their action until after the expiration of the Act's limitation period. *Id.* at 363.

3

Plaintiffs filed the suit in New Jersey state court, and defendants removed to federal district court. *Id.* at 364. The district court denied plaintiffs' motion to remand, characterizing the transaction "as a merger between two national banks," and held that "the state has no role with respect to the merger." *Id.*

On appeal, plaintiffs argued that "the district court erred in permitting removal on the basis of what was, in effect, a federal defense, i.e. defendants' contention that federal statutes rather than state law governs the merger of two national banks." *Id.* at 365. The Third Circuit agreed, finding that the district court "seemed to rely on the 'exclusivity' of federal law to displace" plaintiffs' claims that the transaction was prohibited by New Jersey's banking laws and antitrust law. *Id.* at 368. The Third Circuit rejected the district court's analysis, holding that:

> Even though the preemptive effect of federal legislation has already been established, a state claim does not thereby "arise under" federal law nor is the state court without jurisdiction on that basis. For example, although the Natural Gas Act had already been held to preempt state law on the issue of wholesale natural gas price, the [Supreme Court] held that a contract price dispute filed in state court was not within the original jurisdiction of the federal courts. *Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 6 L. Ed. 2d 584, 81 S. Ct. 1303 (1961). It was immaterial that plaintiff could have elected to proceed on a federal ground. *Id.* at 663. The state claims asserted "do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas." *Id.*
>
> Unlike federal labor relations law, the law with respect to bank mergers is no more "exclusively" federal than was the law with respect to interstate transmission of natural gas. In the case of labor relations, the entire field has been occupied by the federal statute, whereas in the other areas the nature and operation of the federal and state laws must be examined to determine if they can operate compatibly.

*Id.* at 368-369. The Third Circuit held that federal law governing bank mergers "does not displace state law," and, in fact, in the "context of bank holding company regulation, federal law explicitly preserves state law." *Id.* at 369. It was not determinative that plaintiffs could or could

not prevail on their claims because "[f]ederal jurisdiction does not depend on the merits of the plaintiff's complaint." *Id.*

Here, the connection to the Bank Merger Act is even more tenuous than in *Parell*. Plaintiff is in no way challenging Bank of America's acquisition of Countrywide. Rather, Plaintiff acknowledges the acquisition and contends that its impact, under state law, compels the imposition of successor liability on Bank of America. *See Monaco v. Bear Stearns Cos.*, 2011 U.S. Dist. LEXIS 105471, at *58 (C.D. Cal. Sept. 12, 2011) (Otero, J.) ("'Successor liability is governed by state law under the Erie doctrine'") (quoting *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 U.S. Dist. LEXIS 53359, at *10 (C.D. Cal. Apr. 20, 2011) (Pfaelzer, J.)). The Bank Merger Act has no bearing on and provides no remedy to Plaintiff's claims. Moreover, the mere fact that Plaintiff's state law claims could ultimately "impose millions or billions of dollars in liability" on Bank of America (Defendants' Memorandum of Law in Opposition of the Motion to Remand ("Def. Br."), Docket No. 20, at 6) does not create jurisdiction under the Act because "[f]ederal jurisdiction does not depend on the merits of the plaintiff's complaint." *Parell, supra*, 783 F.2d at 369. Accordingly, this Court does not have subject matter jurisdiction over this action under the Bank Merger Act.

**B.**   <u>**Federal Jurisdiction Is Unavailable Under The National Banking Act**</u>

In *Luckett, supra*, plaintiffs – heirs to an estate administered by defendant First Midwest Bank, the surviving entity of a merger between an Illinois banking corporation and Bank Calumet, N.A., a national banking association – asked the court to reconsider its dismissal of plaintiffs' claim for breach of fiduciary duty against defendant for failing to sell an estate property for fair market value. 576 F. Supp. 2d at 926-927. Plaintiffs claimed federal subject matter existed under 28 U.S.C. §§ 1331 and 1337 because "First Midwest's merger with Bank

5

Calumet, and First Midwest's concurrent assumption of Bank Calumet's liabilities, was completed pursuant to the National Banking Act, 12 U.S.C. § 215, *et. seq.*" *Id.* at 928.

The court affirmed dismissal for lack of subject matter jurisdiction, holding that "[a]lthough the merger may have been governed by the National Banking Act, [p]laintiffs' state law breach of fiduciary duty claim does not arise under the National Banking Act." *Luckett*, 576 F. Supp. 2d at 928. Specifically, the court held that:

> Plaintiffs' breach of fiduciary duty claim does not depend on the resolution of any substantial and contested question of federal law. Defendant acknowledges that its merger with Bank Calumet was conducted pursuant to the National Banking Act, and Defendant does not dispute that it assumed Bank Calumet's liabilities in the merger. . . . Plaintiffs argue that the National Banking Act "created" Defendant's liability to Plaintiffs, and thus Plaintiffs' breach of fiduciary duty claims arise under federal law. . . . Whether or not a federal statute "created" the Defendant's liability, however, Plaintiffs' breach of fiduciary duty claim does not arise under that federal statute. Even if a federal defense or other issue may arise during the course of the litigation – though this Court cannot foresee how it would – that is not sufficient to establish federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Jaskolski v. Daniels*, 427 F.3d 456, 459-60 (7th Cir. 2005).
>
> The case at bar involves exclusively on a state law abuse of fiduciary duty claim. Plaintiffs have failed to show that their cause of action requires the resolution of a substantial and disputed question of federal law or that federal law is an essential element of their cause of action.

*Id.* As in *Luckett*, Plaintiff's successor liability and breach of contract claims turn "exclusively" on state law and do not require "the resolution of a substantial and disputed question" of the National Banking Act. *Id.* As a result, this Court also lacks subject matter jurisdiction over Plaintiff's claims under the National Banking Act.

## II.    The Involvement Of Domestic Entities Indirectly Owned By A Foreign Bank Does Not Confer Federal Jurisdiction Under 12 U.S.C. § 632

For Edge Act jurisdiction to exist, the link to international or foreign banking must be significant because "'removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts.'" *Zackaria v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist.

LEXIS 142657, at *5 (C.D. Cal. Dec. 5, 2011) (Phillips, J.) (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005)). Defendants assert that federal jurisdiction exists under the Edge Act because the "[i]nvolvement of [s]ubsidiaries of the Royal Bank of Scotland, a [f]oreign [b]ank . . . confers a foreign aspect to the transactions" at issue here. (Def. Br., at 12.) The subsidiaries referenced by Defendants are Greenwich CFP, Greenwich CAI, and Greenwich CMI (collectively, the "Greenwich Entities"), which are organized in the State of Delaware, with principal places of business in Connecticut. The Greenwich Entities are subsidiaries of Greenwich CHI, a Delaware-incorporated company based in Connecticut. Greenwich CHI is, in turn, a subsidiary of the Royal Bank of Scotland ("RBS"). Recent New York and California federal precedent makes clear that such a tangential connection – requiring that the Court *twice* disregard corporate form and/or pierce the corporate veil in order to potentially reach a foreign entity – does not create the legally significant link required to confer federal jurisdiction under the Edge Act.

For example, in *Weiss v. Hager*, 2011 U.S. Dist. LEXIS 150402 (S.D.N.Y. Dec. 19, 2011), plaintiff brought state law claims sounding in fraud, negligence, and breach of contract against Capital One, N.A. and several of its employees, arising out of defendants' alleged mismanagement of plaintiff's funds. Following defendants' removal on the basis of Edge Act jurisdiction, the federal court granted plaintiff's motion to remand, holding "that the international banking transactions alleged in plaintiff's complaint are not legally significant, and thus plaintiff's claims do not arise out of international banking transactions as required by the Edge Act. On the contrary, plaintiff's claims arise out of various alleged frauds perpetrated against him in the United States." 2011 U.S. Dist. LEXIS 150402, at *8. Indeed, the court found that "[p]laintiff's claims rest solely on state law and relate to international banking only insofar as the

defendants fraudulently convinced plaintiff to wire money to various European bank accounts which were controlled by defendants." *Id.* According to the court, "the only international aspect of this case involves an agreement made in connection with another transaction that was international in character. That plaintiff wired money to various European bank accounts is not integral to plaintiff's claims." *Id.* at *11 (quotations and citations omitted). *See also Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 U.S. Dist. LEXIS 103375, at *10-11 (S.D.N.Y. Sept. 13, 2011) ("In order to find jurisdiction under the Edge Act, a court must be satisfied that a plaintiff's claims 'really involve[] a banking arrangement between a federally chartered bank and a foreign party'") (quoting *Lazard Freres & Co. v. First Nat'l Bank of Md.*, 1991 U.S. Dist. LEXIS 14665, at *3 (S.D.N.Y. Oct. 16, 1991)) (alterations in original).

The same reasoning served as the basis for remand in *Retailers Nat'l Bank v. Harding*, 2006 U.S. Dist. LEXIS 100769, at *8-9 (N.D. Cal. June 30, 2006), where counterclaim-defendant banks argued that credit card transactions with off-shore gambling sites were sufficiently international and foreign to confer Edge Act jurisdiction. The court found that the transactions at issue took place between the domestic counterclaim-defendant banks and the gambling sites' U.S.-based merchant banks. *Id.* at *11-13. Accordingly, "the only banking transaction that crossed the foreign-domestic border was between a merchant bank and an on-line gambling site. Such a transaction [was] too tangentially related to [that] case to satisfy the Edge Act's foreign transaction nexus requirement." *Id.* at *10.

Here, Plaintiff's state law claims arise from Countrywide's breaches in the U.S. of contractual obligations in connection with exclusively U.S.-based mortgage loans. Greenwich CFP, Greenwich CAI and Greenwich CMI, as well as their corporate parent, Greenwich CHI, are U.S.-based and U.S.-incorporated entities. As such, RBS is the sole foreign entity that could

provide the connection to international or foreign banking that is necessary to create jurisdiction under the Edge Act. That connection, however, would require the Court to twice disregard the corporate form and pierce the corporate veil: first, from the Greenwich Entities to Greenwich CHI, and then from Greenwich CHI to RBS. Defendants have not demonstrated that RBS exercised so much dominance or control over the Greenwich Entities to provide any basis for such an extraordinary disregard of the corporate form. *See Société d'Assurance de l'Est SPRL, supra*, 2011 U.S. Dist. LEXIS 103375, at *14-15 ("[d]isregard of the corporate form is warranted only in *extraordinary circumstances*") (quotations omitted; emphasis added). Indeed, Defendants have not shown that RBS had *any* involvement in the underlying transaction, let alone any interaction or business dealings that relate to Plaintiff's claims and that "crossed the foreign-domestic border." Accordingly, RBS – the twice-removed corporate parent of the Greenwich Entities – is "too tangentially related to this case to satisfy the Edge Act's foreign transaction nexus requirement."[2]

---

[2]  Defendants urge that the Edge Act's jurisdictional provisions should be interpreted broadly, in contravention of *Weiss* and *Harding, supra*. (Def. Br., at *8.) However, the U.S. Court of Appeals for the Sixth Circuit has recently rejected that expansive approach. *See Sollitt v. KeyCorp*, Nos. 09-4143,10-3408, 2012 U.S. App. LEXIS 1910, at *7-8 (6th Cir. Feb. 1, 2012) ("There are, to be sure, cases asserting that 'a suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking.' We are reluctant to subscribe to such an inherently limitless view. Suppose, for example, that [plaintiff] had tripped and fallen over a stack of carelessly placed printouts of foreign-currency transactions. This meager association – ridiculous as it is – between the potential negligence claim and the foreign banking transaction that generated the printouts, would appear to suffice for Edge Act jurisdiction under so limitless a view. That cannot be correct") (citations omitted).

## CONCLUSION

For the reasons set forth above, and in the Motion to Remand, this Court should issue an order remanding this action to the Supreme Court of the State of New York, County of New York.

Dated: New York, New York
      April 2, 2012

                     Respectfully submitted,

                     KASOWITZ, BENSON, TORRES
                       & FRIEDMAN LLP

                     By: _____
                        Marc E. Kasowitz (mkasowitz@kasowitz.com)
                        Michael M. Fay (mfay@kasowitz.com)
                        Uri A. Itkin (uitkin@kasowitz.com)

                     1633 Broadway
                     New York, New York 10019
                     (212) 506-1700

                     *Attorneys for Plaintiff*